IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 99-41228
_____


PHILLIP GLEN EARWOOD,

Plaintiff-Appellee,

versus

LEROY MOODY, Etc.; ET AL.,

Defendants

SUSAN GIBBANY,

Defendant-Appellant.
_____

Appeal from the United States District Court for the
Southern District of Texas, Corpus Christi
USDC No. C-97-CV-448
_____

November 2, 2000

Before JOLLY, JONES, and SMITH, Circuit Judges.

PER CURIAM:[*]

This appeal arises from the 42 U.S.C. § 1983 suit of former
prisoner Phillip Earwood.  Earwood alleged, and a jury found, that
San Patricio County nurse Susan Gibbany failed to provide adequate
medical care in violation of Earwood's Eighth Amendment rights.
Because we find that the district court did not err in denying

_____

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

defendant Gibbany's motion for a new trial on the issue of deliberate indifference, we affirm the judgment of the district court.

I

A

Phillip Earwood was incarcerated in 1997 for failure to comply with probation. At the time of his incarceration, Earwood's right leg had been amputated below the knee and his right arm was damaged. Three days after he began his prison term, Earwood slipped and fell while exiting the shower, reinjuring his arm. Susan Gibbany, the San Patricio County prison nurse, was on call the night of his fall, and referred Earwood to a local hospital where they splinted his arm.

During the days following his fall, Earwood told Gibbany that he believed his arm was seriously broken and requested to see another doctor. Gibbany called for an appointment with another doctor six days after Earwood's initial request. Six days after her call, Earwood was taken to see the doctor. The doctor put Earwood's arm into a cast. Earwood testified that, despite his request, Gibbany refused to authorize the doctor to examine Earwood's amputated leg during this visit.

After this doctor visit, from May 28, 1997 to June 11, 1997, Earwood did not shower. Earwood testified that when he asked for

a shower, he was told that Gibbany did not want him to get the cast on his arm wet. He also says that he asked for a bag to cover his cast and was refused. On the other hand, Gibbany says that Earwood refused to shower because he was concerned that the cast would get wet. Shortly afterwards, Earwood's stump became infected. He says that his requests for showers and to see a doctor were again denied.

On July 9, 1997, Earwood's doctor prescribed an antibiotic for his infection, and Betadyne soaks for his stump. Earwood says that the doctor ordered Gibbany to administer the soaks, and that she refused. Gibbany says that Earwood was able to clean and change the bandage on his stump himself, and that he refused medication on several occasions. Earwood says that Gibbany did not instruct the jailers to bring Earwood to the infirmary, never observed him cleaning the stump and never confirmed that the wound was being cleaned correctly. Although Earwood was given a bucket, he was neither given a disinfectant nor clean rags, and Gibbany did not instruct the jailers to sanitize the bucket. Earwood's arm was in a cast, and he had difficulty filling a bucket of water and transporting it in order to properly clean his stump. When Earwood complained to Gibbany that he was not receiving enough peroxide to clean his stump, she told him to "just go to hell." Gibbany also did not instruct that he be sent to the newer shower facilities,

3

which he could have entered without the help of other inmates or jailers.

Earwood was subsequently hospitalized twice for infection to his stump and his forearm. The infection in his stump required surgery to drain the infection. After the infections cleared up, Earwood was discharged back to the jail. His second hospital stay was extended to keep the wound from being reinfected in the jail's "unstable environment." Earwood contends that Gibbany again refused to help him after his return. Two weeks after he returned to jail the second time, he was again hospitalized for infection. He again underwent surgery, this time in his arm, to drain the infection. Earwood was released from jail on November 7, 1997, and his infection started clearing up.

B

In August of 1997, Earwood brought a 42 U.S.C. § 1983 suit against San Patricio County Nurse Susan Gibbany, as well as San Patricio County and San Patricio County Sheriff Leroy Moody. Earwood claimed that the defendants failed to provide adequate medical treatment in violation of his Eighth Amendment rights while he was incarcerated. He also made several negligence and Americans with Disabilities Act claims.

The case was tried by jury in May 1999. The district court dismissed all claims against defendant Moody and the section 1983

4

claims against San Patricio county.  The court submitted the case to the jury on the ADA claim, the negligence claims, and the claim that Gibbany was deliberately indifferent to Earwood's serious medical needs in violation of the Eighth Amendment.  The jury found that Gibbany was both consciously indifferent to the serious medical needs of Earwood and that her conduct constituted intentional callous indifference and willful and wanton disregard of Earwood's rights.  The jury also found that San Patricio County's conduct constituted negligence under state law, but did not find an ADA violation.  The jury awarded Earwood $108,500 for actual damages for past physical pain and mental anguish, future physical impairment and past medical care.[1]  The jury also assessed punitive damages against Gibbany for $20,000.  The district court judge found Gibbany liable for the entire judgment award, including the $20,000 in punitive damages, and San Patricio County liable for seventy percent of Earwood's damages. The district court also found both parties jointly and severally liable for attorney's fees and costs.

The defendants filed a post-judgment motion for a new trial under Federal Rule of Civil Procedure 59.  The district court

---

[1] The district court reduced this actual damage total by $28,798.40, which represented the medical expenses paid by San Patricio County.

5

denied this motion in September 1999. Gibbany now appeals the district court's denial of her motion for a new trial.

## II

Gibbany did not file a pre-verdict motion for judgment under Federal Rule of Civil Procedure 50, and thus is only appealing the district court's denial of her motion for a new trial. Appellate review of a district court's denial of a motion for new trial is highly deferential to the trial court. Dixon v. International Harvester Co., 754 F.2d 573 (5th Cir. 1985). A district court's denial of a motion for new trial will be affirmed unless the appellant "makes a 'clear showing' of 'an absolute absence of evidence to support the jury's verdict,' thus indicating that the trial court had abused its discretion in refusing to find the jury's verdict 'contrary to the great weight of the evidence.'" Whitebread v. Food Max of Miss., Inc., 163 F.3d 265, 269 (5th Cir. 1998) (citing Hidden Oaks, Ltd. v. City of Austin, 138 F.3d 1036, 1046 (5th Cir. 1986) (quoting Dawsey v. Olin Corp., 782 F.2d 573 (5th Cir. 1985)).

## III

Inadequate medical care by prison medical personnel can rise to the level of an Eighth Amendment violation, actionable under 42 U.S.C. § 1983, when the conduct "amounts to deliberate indifference to [the prisoner's] serious medical needs, constitut[ing] the

6

unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." Stewart v. Murphy, 174 F.3d 530, 533 (5th Cir. 1999) (citations omitted). To prove deliberate indifference, a prisoner must show that the official "knows of and disregards an excessive risk to inmate health or safety; the official must be both aware of facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970, 1979 (1994). Malpractice and negligence do not rise to the level of an Eighth Amendment violation. Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir. 1993).

Allegations of delay of treatment and failure to provide adequate medical facilities may, in certain circumstances, be enough to state a claim of deliberate indifference. For instance, we have found that a prisoner stated a claim for deliberate indifference when officials were made aware of, and delayed treatment of, a prisoner's broken jaw. Harris v. Hegman, 198 F.3d 153 (5th Cir. 1999). A prisoner with a brace who alleged that he acquired a fungal infection after prison officials did not allow him to bathe for several months also stated a claim for deliberate indifference. Bradley v. Puckett, 157 F.3d 1022 (5th Cir. 1998).

Gibbany is only entitled to a new trial if she can demonstrate that there is no evidence that supports the jury's verdict. Whitebread, 163 F.3d at 269. Although Gibbany disputes the conclusions to be drawn from the evidence, she cannot demonstrate an "absolute absence of evidence" of deliberate indifference. Id. Earwood presented evidence that the infections in his arm and stump were serious risks to his safety. Earwood's infections developed because he was unable to clean his arm and leg stump without help and without proper cleaning supplies. Because of his infections, Earwood was hospitalized on four separate occasions and had to have surgery to remove the infection in both his arm and his stump. After his hospitalizations and return to jail, the infections recurred.

Earwood also presented evidence showing that Gibbany was aware of the infections that developed in his arm and stump, and that she refused to help him. There was evidence that Gibbany neither provided adequate cleaning supplies for Earwood to clean his stump, even after she knew of the infections, nor provided him with help in showering or cleaning the stump. Although Gibbany contends that she followed the doctor's orders, gave Earwood the proper medical supplies and did not know that the jailers failed to properly assist Earwood, Earwood presented evidence that the jury could have

found more credible than the evidence presented by Gibbany.  As long as there is evidence on which a jury could conclude that Gibbany was consciously indifferent to the serious medical needs of Earwood, we cannot find that the district court erred in not granting Gibbany's motion for a new trial.

V

Because there is some evidence supporting the jury's finding of Gibbany's deliberate indifference, we AFFIRM the district court's denial of Gibbany's motion for a new trial.

A F F I R M E D.