**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

**No. 01-30153**
_____

**AL MORRIS,**

**Plaintiff-Appellee,**

**versus**

**JEFFERSON PARISH SHERIFF'S OFFICE; ET AL.,**

**Defendants,**

**HARRY LEE, Sheriff, in his official capacity,**

**Defendant-Appellant.**

_____

**Appeal from the United States District Court**
**for the Eastern District of Louisiana**
**(98-CV-1656-K)**
_____

June 20, 2002

Before DUHÉ, BARKSDALE, and DENNIS, Circuit Judges.

PER CURIAM:[*]

The principal issue on appeal is whether sufficient evidence supports the jury's verdict that Al Morris was not rehired by Harry Lee, Sheriff of Jefferson Parish, Louisiana, because Morris opposed same-sex harassment in the workplace. Sheriff Lee appeals the denial of his pre-verdict FED. R. CIV. P. 50(a) motions for judgment as a matter of law (he did not so move post-verdict, pursuant to Rule 50(b)) and his FED. R. CIV. P. 59 motion for new trial,

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

following a judgment of, *inter alia*, $5,000 in compensatory damages and $47,000 in back pay.  **AFFIRMED.**

I.

Morris was hired by Sheriff Lee in 1988.  Two former supervisors reported that Morris never received written reprimands while under their supervision.  One testified, however, that Morris and several others were habitually late, but that Morris was never late often enough to warrant a suspension.

While on First District day watch from February 1996 until the Fall of 1997, Morris witnessed a series of events, which he characterized as homosexual harassment, directed against Deputy Jeffrey Picone by Sergeant James Schanbein (their supervisor). These events included unwelcome, public sexual advances, sexual comments during roll call prior to the beginning of day watch, and false statements to third parties concerning Picone's sexual orientation.  Morris confronted Sergeant Schanbein, which resulted in Sergeant Schanbein's becoming upset, screaming at Morris, and storming out of district headquarters.

Morris complained to Lieutenant James Cavalier, Sergeant Schanbein's immediate supervisor, about Sergeant Schanbein's harassment during August or September 1996, but Lieutenant Cavalier did nothing.  Morris did not complain, however, to Lieutenant Joseph Torres, Morris' watch commander.

Following these complaints, during the fall of 1996:  Morris received several suspensions and reprimands for tardiness and unsatisfactory performance; Sergeant Schanbein would "return[]

2

every report that [Morris] filled out"; and Sergeant Schanbein routinely screamed at Morris about problems with his reports.

Morris then complained about the harassment to Lieutenant Cavalier's immediate supervisor, Major Lawrence Juster, on 2 December 1996. At that meeting, Lieutenant Cavalier accused Morris of having "a mental problem". The next day, Morris was ordered to DePaul Psychiatric Hospital for three weeks. (Had Morris refused to go, he probably would have been fired.) Morris contends being ordered to DePaul was for no particular reason, and doctors found no medical necessity for his being there.

Sergeant Schanbein's harassment of Deputy Picone continued during the early part of 1997, with Deputy Picone filing an internal affairs report against Sergeant Schanbein that April. That May, Morris' supervisor, Major Sue Ellen Monfra, recommended Sergeant Schanbein's being suspended for ten days, but no one ever told Major Monfra that Morris witnessed or complained of Sergeant Schanbein's harrasment. Chief Craig Taffaro later increased Sergeant Schanbein's punishment to a 30-day suspension and demotion.

Morris followed Deputy Picone's complaint in April 1997 with his own complaint to Jefferson Parish Sheriff's Office (JPSO) Internal Affairs that June. This complaint was filed several days after Morris was reassigned from the day to the midnight watch.

Morris claims his personnel files were "doctored" to reflect poor work; at trial, however, he could not specifically identify what was changed. Following his Internal Affairs complaint,

3

Morris, in August 1997, received letters confirming his suspensions for incidents of tardiness that occurred in October 1996. (Morris claims, throughout his brief here, that he was "suspended" multiple times for the same incidents. However, it appears that the second "suspensions" were confirmations of earlier imposed suspensions.) Morris was also put on probation for an automobile accident and other minor incidents.

Morris filed his first discrimination charge with the EEOC on 3 November 1997, claiming retaliation for complaining about same-sex harassment. Shortly thereafter, on 12 November, he received another letter of reprimand confirming his suspension for tardiness in October 1996.

Morris initially filed this action against JPSO in June 1998, claiming retaliation in violation of Title VII in the form of reprimands, suspensions, poor performance reviews, and the psychiatric evaluation's being ordered. In July, he amended his complaint to add Sheriff Lee, in his official capacity as Sheriff of Jefferson Parish. (The district court subsequently granted an unopposed motion to dismiss JPSO because, under Louisiana law, that entity lacks the legal capacity to sue or be sued.)

Following Morris' second EEOC charge in October 1998, he was investigated for aggravated rape and weapons violations, which included a search of his home. In February 1999, he was required to give a statement concerning an incident involving use of his JPSO automobile by his friend Paulette Doyle, who was involved in other incidents, discussed below.

4

In March 1999, Morris was investigated for criminal extortion and conspiracy to commit murder. On 16 March, he was questioned about the conspiracy allegations and was suspended indefinitely, pending investigation into the criminal charges. (Morris asserts throughout his brief that he was *charged* with conspiracy to commit murder; his trial testimony confirms he was never *charged* with that crime by the District Attorney.)

That April, Morris filed his third charge of discrimination with the EEOC. He claimed the investigations were a part of ongoing retaliation.

Morris was terminated on 20 May 1999, after the District Attorney accepted for prosecution the criminal extortion charge. (In Morris' subsequent unemployment compensation hearing, Sheriff Lee admitted Morris was fired because of the pending felony extortion charges.) Morris was arrested that June.

That August, Morris amended his complaint in this action. He added false arrest claims against several JPSO officers involved in investigating the extortion charges and added a false imprisonment claim for the incident concerning the psychiatric hospital.

Morris was acquitted in an October bench trial on the extortion charge. Nevertheless, Sheriff Lee refused to rehire him.

The criminal allegations against Morris from late 1998 through 1999 (aggravated rape, weapons violations, conspiracy to commit murder, and extortion) involved the same individuals. At that time, Eric LeBlanc shared a security apartment with Morris and his wife, Dawn Morris. LeBlanc was involved in an extra-marital affair

5

with Paulette Doyle, the above-named friend of Morris and his wife. Morris believes Shawn Doyle, Paulette Doyle's husband, instigated the rape complaint against Morris because Shawn Doyle was upset with Morris' role in facilitating LeBlanc's affair with Shawn Doyle's wife, Paulette Doyle.

The conspiracy to commit murder complaint (which, as noted, was never pursued beyond the investigative stage) arose because Morris: allegedly made violent threats against Shawn Doyle; and believed Paulette Doyle might be taking nude photographs of Morris' child while she was babysitting.

The extortion charge involved Morris' alleged attempt to extort concessions from a woman in the process of adopting a child fathered by LeBlanc. The biological mother was Paulette Doyle. Morris' conversation with the woman, in which Morris revealed he was a JPSO deputy and mentioned his colleagues knew how to wrest custody of a child away from others, was recorded and provided to JPSO by the Volunteers of America (the adoption agency).

This civil action was tried over five days in mid-2000. Kevin Nardelle, a friend of the Morrises, Doyles and LeBlanc, testified JPSO officers coerced him into giving a false statement concerning Morris' involvement in a conspiracy to commit murder. However, Nardelle admitted Morris told him that he (Morris) would defend himself if Doyle ever threatened him.

In Sheriff Lee's defense, Deputy Jeffrey Galpin testified Sergeant Schanbein was obnoxious and picked on all of the deputies. Two officers investigating the conspiracy to commit murder

6

allegations flatly denied coercing Nardelle and testified Nardelle admitted to being afraid of Morris. Further, Deputy Chief James Miller testified he knew nothing of Morris' complaint of workplace sexual harassment when he (Deputy Chief Miller) was first informed of the potential extortion charge against Morris.

Finally, Chief Newell Normand testified he was the person who declined to rehire Morris following his acquittal, with the sole reason for not rehiring him being Morris' attempt to interfere with the adoption. Chief Normand conceded on cross-examination that Morris' complaint for this civil action had to have come across his desk because he (Chief Normand) has the sole authority to assign attorneys to defend against discrimination actions.

At the close of Morris' case in chief, and pursuant to FED. R. CIV. P. 50(a), Defendants (Sheriff Lee and the individual officers) moved for judgment as a matter of law (JML) on all claims. The court dismissed all federal and state claims for false imprisonment stemming from Morris' psychiatric treatment and dismissed, on qualified immunity grounds, the false arrest claims against the individual officers. The court deferred ruling on the Title VII claim.

Sheriff Lee renewed his Rule 50(a) motion at the close of all the evidence. The motion was denied.

Following the jury verdict and award of $5,000 in compensatory damages and $47,000 in back pay, the district court entered judgment on 28 August 2000. Because Schanbein no longer worked for JPSO and Morris had little contact with those making employment

7

decisions, the court ordered his reinstatement rather than front pay.

Pursuant to FED. R. CIV. P. 59, Sheriff Lee moved for a new trial and, in the alternative, to alter or amend the judgment to remit the back pay award by any earnings realized by Morris during the relevant time period. But, Sheriff Lee did not make a post-verdict motion for JML pursuant to FED. R. CIV. P. 50(b). Following a hearing on the Rule 59 motion (in which *no* argument concerning JML was made), the court denied the motion.

## II.

Again, post-verdict, Sheriff Lee only sought a new trial; he did not move for JML pursuant to Rule 50(b). On appeal, however, he seeks either a new trial (based upon his Rule 59 motion) or reversal of the jury verdict based upon insufficiency of the evidence (the equivalent of JML). It goes without saying that whether Sheriff Lee can now seek reversal on insufficiency grounds is important because of the differing standards of review.

"The denial [of a new trial motion] will be affirmed unless, on appeal, the party that was the movant in district court makes a clear showing of an *absolute absence of evidence to support the jury's verdict*, thus indicating that the trial court had abused its discretion in refusing to find the jury's verdict contrary to the great weight of the evidence." ***Whitehead v. Food Max of Miss., Inc.***, 163 F.3d 265, 269 (5th Cir. 1998) (emphasis in original; internal quotation marks omitted; quoting ***Hidden Oaks Ltd. v. City of Austin***, 138 F.3d 1036, 1049 (5th Cir. 1998)). On the other

8

hand, for a JML denial, we will overturn a jury verdict only if "there is no legally sufficient evidentiary basis for a reasonable jury to find for" the nonmovant. *Id.* (quoting FED. R. CIV. P. 50(a)); *see also **Mato v. Baldauf***, 267 F.3d 444, 450-51 (5th Cir. 2001). In short, Sheriff Lee's burden is not as great under the standard of review for JML as it is for a new trial. ***Whitehead***, 163 F.3d at 269 & n.2.

## A.

The Federal Rules of Civil Procedure were amended in 1991 to change the terminology for pre-verdict motions for directed verdict and post-verdict motions for judgment notwithstanding the verdict (JNV). Prior to the adoption of the 1991 amendments to FED. R. CIV. P. 50, it was well-established that failure to move, pursuant to Rule 50(b), for JNV within ten days of the verdict precluded granting JNV on appeal. *See, e.g., **Johnson v. New York, New Haven & Hartford R.R. Co.***, 344 U.S. 48, 50 (1952) ("We have said that in the absence of a motion for [JNV] made in the trial court within ten days after reception of a verdict the rule *forbids* the trial judge or an *appellate court* to enter such a judgment." (emphasis added)); ***Zervas v. Faulkner***, 861 F.2d 823, 832 n.9 (5th Cir. 1988) (if appellant does not move for JNV, new trial is *only* available relief); ***Smith v. Trans-World Drilling Co.***, 772 F.2d 157, 160, 162 (5th Cir. 1985).

In ***Johnson***, appellant moved for a directed verdict at the close of all evidence; but, following an adverse jury verdict, appellant moved only to set aside the verdict as excessive. 344

9

U.S. at 49. Restated, a JNV motion was not filed. Nevertheless, on appeal, appellant asserted that the relief sought post-verdict should be treated as a motion for JNV. *Id.* at 50-51. The Court disagreed: "Rule 50(b) was designed to provide a precise plan to end the prevailing confusion" surrounding directed verdicts and JNV, *id.* at 52; Rule 50(b) required a timely post-verdict motion as "an essential part of the rule, firmly grounded in principles of fairness"; the Court had previously rejected an amendment allowing appellate courts to enter judgments for parties who failed to timely move for JNV, *id.* at 53; and, because the appellant only timely moved to set aside the verdict and for new trial, it was "entitled only to a new trial, not to a judgment in its favor", *id.* at 54.

In cases where no JNV motion was made, our court followed **Johnson** with respect to limiting the available remedy to a new trial. *See* **Zervas**, 861 F.2d at 832 n.9 (citing cases back to 1970 and noting the 11th Circuit followed 5th Circuit precedent in this regard). In such instances, however, when a pre-verdict directed verdict motion was timely made, our standard of review was the same as if a post-verdict JNV motion had been made. **Trans-World**, 772 F.2d at 160 (reversal required if "the facts and inferences point so strongly in [appellant's] favor that reasonable men could not arrive at a contrary verdict"). **Trans-World** held that a directed verdict motion properly preserved sufficiency of evidence issues for appeal, *but* the failure to move for JNV limited the available relief to a new trial. *Id.* at 159, 162.

10

Logically, this result is correct given the circumstances. Based on appellant's directed verdict motion, appellee (nonmovant) was put on notice his evidence might be insufficient. However, because the appellant failed to request JNV following the verdict, as required by Rule 50, his relief should be limited to what he requested post-verdict in the trial court - a new trial.

A similar result is logical under Rule 50 as it exists today because, pursuant to the Rule, the court should only consider JML post-judgment upon the movant's renewal of that motion, and the renewed JML must be made within 10 days of the entry of judgment. *See* FED. R. CIV. P. 50(b) ("The movant *may* renew its request for judgment as a matter of law by filing a motion *no later than* 10 days after entry of judgment – and may alternatively request a new trial or join a motion for a new trial under Rule 59. In ruling on a *renewed motion*, the court may:...." (Emphasis added.)).

Again, the 1991 amendments to Rule 50 merely changed the terminology, and not the substance, of the Rule, *see* 9A Wright & Miller, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 2537 (1995). Accordingly, in **Satcher v. Honda Motor Co.**, 52 F.3d 1311 (5th Cir. 1995), our court followed the pre-1991 approach:

> To fully preserve error on appeal for failure to grant a motion for judgment, the moving party must file both a pre-verdict Rule 50(a) motion at the close of all the evidence and the renewed Rule 50(b) motion. *An appellant who failed to do so in the district court is not entitled to rendition of judgment in his favor on appeal, but is at most entitled to a new trial.*

11

*Id.* at 1315 (emphasis added); *see also* **Whitehead**, 163 F.3d at 271. In **Satcher**, our court concluded that Honda's technical noncompliance with Rule 50(b) (styling the post-verdict motion as one for new trial but, in the body of the motion, arguing for JML in the alternative) was *de minimus* because Rule 50's two basic purposes were satisfied: alerting the opposing party of potential insufficiency *prior* to submitting the case to the jury; and enabling the trial court to re-examine the sufficiency of the evidence *following* the verdict. 52 F.3d at 1315; *see also* **Bohrer v. Hanes Corp.**, 715 F.2d 213, 216 (5th Cir. 1983), *cert. denied*, 465 U.S. 1026 (1984).

In this case, with his Rule 50(a) motions, Sheriff Lee certainly satisfied this first purpose of Rule 50; however, his failure to renew his Rule 50(a) motion with one under Rule 50(b) did not allow the district court post-verdict to re-evaluate the sufficiency of the evidence. Consequently, although we will review to determine whether "there is no legally sufficient evidentiary basis for a reasonable jury to find for" Morris, Sheriff Lee's only available remedy is a new trial. **Whitehead**, 163 F.3d at 269.

### B.

Under the well-known, **McDonnell Douglas** framework, which applies when, as here, plaintiff presents only circumstantial evidence of retaliatory animus, plaintiff must present a *prima facie* case; defendant bears the burden of producing a legitimate, non-discriminatory reason; and, if defendant does so, plaintiff must show the proferred reason is merely a pretext for intentional

12

discrimination. *E.g., Price v. Fed. Express Corp.*, 283 F.3d 715, 719-20 (5th Cir. 2002); *Montemayor v. City of San Antonio*, 276 F.3d 687, 692 (5th Cir. 2001).

A *prima facie* Title VII retaliation case requires Morris to show: he engaged in protected conduct; he was subject to an adverse employment action; and the adverse employment action was motivated by the protected conduct. *E.g., Chaney v. New Orleans Public Facility Mgmt., Inc.*, 179 F.3d 164, 167 (5th Cir. 1999). Once Sheriff Lee offered a non-discriminatory reason for his failure to rehire Morris, any inference of discrimination drops away; Morris must *prove* the failure to rehire would not have occurred but for his protected conduct. *See Montemayor*, 276 F.3d at 692. However, even though plaintiff presents a *prima facie* case and provides sufficient evidence to reject defendant's explanation,

> an employer would be entitled to [JML] if the record revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred.

*Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 148 (2000). In other words, if the employee would have been terminated even in the absence of the protected conduct, the employer is not liable for unlawful retaliation even if the plaintiff's conduct is a substantial element in the employer's termination decision. *Long v. Easterfield College*, 88 F.3d 300, 305 n.4 (5th Cir. 1996).

1.

Sheriff Lee contends the evidence: is insufficient to support the jury's verdict that Morris was fired because he opposed same-sex harassment in the workplace; does not establish causation (necessary for Morris' *prima facie* case) because of the three-year gap between Morris' complaint and the adverse employment action; and, in the light of the extortion charges brought against Morris, fails to prove, as pretextual, using the extortion charge as a reason for not rehiring Morris.

Morris counters: the evidence was sufficient; and the series of reprimands, suspensions, transfers, and investigations mitigate against finding a three-year gap between his protected conduct and the adverse employment action. Further, quoting the portion of **Reeves** set out above, Morris contends **Reeves** placed the factfinder in the position to determine discrimination *vel non*. **Reeves**, 530 U.S. at 148. In this regard, when a reviewing court is asked to overturn a jury verdict, it "must disregard all evidence favorable to the moving party that the jury [was] not required to believe". *Id.* at 151.

The jury had evidence that Sheriff Lee did not retaliate against Morris: evidence (including his own admission) of habitual tardiness, poor work performance, and, in less than six months, four complaints involving criminal misconduct (one of which went to trial). On the other hand, it is, of course, the function of the jury to weigh the evidence and make credibility determinations. *E.g., id.* at 150; **Green v. Adm'rs of the Tulane Educ. Fund**, 284

14

F.3d 642, 652 (5th Cir. 2002). As Sheriff Lee correctly observes, "a plaintiff's *prima facie* case, combined with sufficient evidence [of pretext], may permit a trier of fact to find" discrimination. *Reeves*, 530 U.S. at 148. Apparently, that is what occurred here: the jury weighed the evidence; made credibility determinations concerning witnesses; and found evidence of discrimination.

Chief Normand testified that: JPSO investigates all criminal reports, particularly those lodged against JPSO officers; and Morris' attempted interference with the adoption procedures justified his not rehiring Morris. But, as noted, the jury was not *required* to believe this testimony.

To support causation and pretext, Morris testified he was unaware of anyone else being disciplined for tardiness as he had been following his same-sex harassment complaints (Sheriff Lee produced no evidence to refute this); the evidence suggested a pattern of adverse actions (while probably not reaching the level of adverse employment actions) over the course of several years following Morris' harassment complaints; the jury could have inferred that Chief Normand knew about this civil action when he made the decision not to rehire Morris; and Chief Normand could not dispute that Sheriff Lee *hired two officers with felony records after Normand refused to rehire Morris* (even though Morris was *not* convicted of extortion).

Sheriff Lee's position was that he terminated Morris because of pending criminal charges and did not rehire him because of the conduct which led to those charges. There is no "other

15

nondiscriminatory reason" provided or "abundant and uncontroverted independent evidence that no discrimination had occurred". **_Id._** at 148. The jury was provided evidence supporting and contradicting both Sheriff Lee's and Morris' theories. Accordingly, given our standard of review requiring us to disregard all evidence favorable to the moving party that is controverted, the evidence, which the jury was permitted to believe, could support the jury's finding that Morris' complaints concerning same-sex harassment motivated Sheriff Lee's decision not to rehire Morris following his acquittal.

2.

Obviously, because there was sufficient evidence to support the jury's verdict, we need not address whether there was "an absolute absence of evidence" to support Sheriff Lee's Rule 59 new trial motion. _See_ **_Whitehead_**, 163 F.3d at 269.

III.

For the foregoing reasons, the judgment is

**_AFFIRMED._**

16