Nicolas Leandro MARTINEZ, Individually, and as Independent Administrator of the Estate of Margaret Gloria Martinez, Deceased; Christina Marie Ortiz; Carmen Rachel Ortiz; and Miguel Antonio Ortiz

v.

Cesar H. PORTA, M.D.; Ramasamy Selvaraj, M.D.; Scott Williamson, M.D.; and United Regional Health Care System, Inc., d/b/a United Regional Health Care System.

Action No. 4:03–CV–915–Y.

United States District Court,
N.D. Texas,
Fort Worth Division.

March 4, 2009.

H. Dustin Fillmore, III, Charles W. Fillmore, Fillmore Law Firm, Fort Worth, TX, for Nicolas Leandro Martinez, Christina Marie Ortiz, Carmen Rachel Ortiz and Miguel Antonio Ortiz.

Jennifer M. Andrews, Wallach & Andrews PC, Fort Worth, TX, for Cesar H. Porta, M.D.

Randy J. Hall, Decker Jones McMackin McClane Hall & Bates, Fort Worth, TX, for Cesar H. Porta, M.D. and Ramasamy Selvaraj, M.D.

Susan E. Baird, Cotten Schmidt, Fort Worth, TX, for Scott Williamson, M.D.

Carol D. Williamson, Joseph A. Turano, Brian G. Hamilton, Strasburger & Price, Dallas, TX, for United Regional Health Care System, Inc.

## ORDER GRANTING OBJECTIONS AND MOTIONS TO STRIKE

TERRY R. MEANS, District Judge.

Pending before the Court are the Objections and Motions to Strike Experts (doc. # 263), filed October 31, 2008. The Court

SUSTAINS the objections[1] and GRANTS the motions.

## I. BACKGROUND

The facts of this case were set out in this Court's previous summary-judgment order and are adopted here. In short, Margaret Martinez died as the result of a cardiac arrest after two visits to the emergency department of defendant United Regional Health Care System, Inc. ("URHCS"). Martinez's family (collectively, "Plaintiffs") filed suit against URHCS, for violating the Emergency Medical Treatment and Active Labor Act ("EMTALA") by failing to provide Martinez with an appropriate medical screening and by failing to treat Martinez similarly to other patients with similar symptoms. *See* 42 U.S.C.A. § 1395dd (West Supp. 2008). Plaintiffs also sued the doctors who treated Martinez at URHCS—defendants Ramasamy Selvaraj, Cesar H. Porta, and Scott Williamson—for medical negligence under Texas law. This Court denied the parties' request for summary judgment and Defendants' *Daubert* challenges to Plaintiffs' experts. Plaintiffs now attack URHCS's experts' opinions.

## II. EXPERTS' OPINIONS

■ Expert testimony is presumed admissible, and this Court has broad discretion to decide whether to admit or exclude expert testimony. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 588, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993); *Satcher v. Honda Motor Co.*, 52 F.3d 1311, 1317 (5th Cir.1995). Expert testimony is admissible to aid the fact-finder in determining a fact in issue if the testimony is based upon sufficient facts or data, the testimony is the product of reliable principles and methods, and the witness has applied the principles and methods reliably to the facts of the

case. *See* Fed.R.Evid. 702. Normally, questions regarding the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility, which should be left for the fact-finder's consideration. *See Dixon v. Int'l Harvester Co.*, 754 F.2d 573, 580 (5th Cir.1985).

URHCS proffered Paul K. Bronston and Hugh H. West as medical experts. Both Bronston and West opined that URHCS did not violate EMTALA regarding Martinez's treatment. Bronston exonerated URHCS of any EMTALA violation based on his conclusion that Selvaraj and Porta exercised their good-faith judgment in nondiscriminatorily determining an appropriate screening exam. Bronston defined a medical screening exam as "a process in which a physician uses their [sic] clinical judgment to screen a patient to determine if an emergency medical condition exi[s]ts." (Plfs.' Mot. for Partial Summ. J.App. 677, 683.) Likewise, West concluded that URHCS did not violate EMTALA. West stated that an appropriate medical screening exam is one that follows the doctor's "best clinical judgment" and is "uniformly applied to patients without discrimination based upon economics or other factors." (Plfs.' Mot. for Partial Summ. J.App. 717, 719.)

■ While it is true that a qualified expert is not prohibited, ipso facto, from expressing an opinion on an ultimate issue of fact, such an opinion cannot be based on an erroneous legal premise. *See* Fed. R.Evid. 704; *cf. Leverette v. Louisville Ladder Co.*, 183 F.3d 339, 341 (5th Cir. 1999) (finding expert testimony irrelevant because expert failed to properly consider applicable state law); *Torres v. County of Oakland*, 758 F.2d 147, 150 (6th Cir.1985) (stating testimony containing legal conclu-

---

1. This Court overrules a small portion of Plaintiffs' objections, which is noted below.

sion problematic because the witness could be expressing erroneous legal standards to jury); *Fed. Aviation Admin. v. Landy,* 705 F.2d 624, 632 (2d Cir.1983) (holding questions soliciting FAA employee's understanding of meaning and applicability of administrative regulations invades province of court). Indeed, ultimate-issue opinions must be otherwise admissible under Rules 701 and 702. *See* Fed.R.Evid. 704 advisory committee's note.

■ Under EMTALA, the motivations of the agents and employees of URHCS are irrelevant to determining whether EMTALA was violated. *See, e.g., Power v. Arlington Hosp. Ass'n,* 42 F.3d 851, 857–58 (4th Cir.1994). Here, Bronston and West incorrectly believed that a discriminatory motive on the treating doctor's part is the crux of an EMTALA claim. Thus, their opinions are based on an improper foundation and fall on that basis. *See generally Southard v. United Reg'l Health Care Sys.,* No. 7:06–CV–011–L, 2008 WL 4489692, at *2 (N.D.Tex. Aug. 5, 2008) (holding Bronston's and West's opinions inadmissible regarding whether EMTALA violated because opinions based on erroneous legal premise and attempted to define undefined statutory term).[2] Their legal conclusions are also unhelpful and, thus, irrelevant because they attempt to do what this Court is charged with doing— informing the jury of the law applicable to the case. Additionally, West incorrectly evaluates and attacks Plaintiffs' experts' qualifications, which is an issue for this Court, not a retained expert.

Plaintiffs additionally complain that West's "misstatements" regarding Martinez's reports of chest pain should be stricken. Specifically, Plaintiffs take issue with West's separation of Martinez's chest-pain reports from her reports that she had arm, shoulder, back, abdominal, neck, and head pain. In other words, West asserts that when Martinez reported pain in other areas of her body, it was unrelated to her chest pain. This challenge goes merely to the weight to be accorded such testimony and does not bar admission. This Court cannot fault URHCS's expert from failing to take into account the facts as cast by Plaintiffs.

### III. CONCLUSION

Because Bronston's and West's opinions are based on an incorrect interpretation of EMTALA and because their legal conclusions usurp the province of this Court, the majority of Plaintiffs' objections to Bronston's and West's opinions are sustained. Bronston's May 18, 2006, letter and April 14, 2008, supplemental report are stricken. (Plfs.' Mot. for Partial Summ. J.App. 676–88.) The following portions of West's declarations are stricken:

1. Declaration: paragraphs 9(A), 9(B), 9(C), and 9(D). (Plfs.' Mot. for Partial Summ. J.App. 708–10.)

2. Supplemental Declaration: paragraphs 5(A), 5(B), 5(C), 5(D), 5(E), 5(F), 5(G), 5(H), 5(I), 5(J), 5(K), 5(L), 6(G), 6(H), 6(I), 6(J), 6(K), 6(L), 6(M), and 6(N). (Plfs.' Mot. for Partial Summ. J.App. 715–31.)

---

**2.** URHCS does not attempt to distinguish or even discuss *Southard,* which, excluded these same experts' identical EMTALA opinions in a similar case against URHCS.